IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 5:69-CV-2771(MTT) |
| STATE OF GEORGIA, Peach County School District through the Peach County Board of Education, *et al.*, | ) ) ) ) ) | |
| Defendant. | ) ) | |

# ORDER

In this long dormant, nearly five decades old desegregation lawsuit, the Parties want the Court to get involved in a charter school dispute. But, in an Order dated February 25, 2015, the Court noted that the United States and the Peach County School District had long ago jointly moved "to have this case dismissed since these parties agree that defendants have achieved and maintained a unitary status in all respects for several years, and that the judgment of this Court has been fully satisfied." (Doc. 1-18). This caught the Court's attention because if in fact the Peach County School District had long ago achieved unitary status,[1] then it would seem that this action should be dismissed as to the Peach County School District. This would mean, of course, that there would be no need for the Court to settle a charter school dispute.

---

[1] To determine whether a school district that has practiced *de jure* segregation has achieved unitary status, "a district court must determine (1) whether the local authorities have eliminated the vestiges of past discrimination to the extent practicable and (2) whether the local authorities have in good faith fully and satisfactorily complied with, and shown a commitment to, the desegregation plan." *United States v. State of Ga., Troup County*, 171 F.3d 1344, 1347 (11th Cir. 1999).

Accordingly, the Court ordered the Parties to update its motion to dismiss by March 11, 2015.  In addition, the Court sent a copy of its Order to the NAACP Legal Defense and Educational Fund ("LDF Fund") because it appeared that the LDF Fund had represented residents of the school districts who had intervened in the case decades earlier and who had opposed the motion to dismiss (the "Plaintiff-Intervenors").

The responses to the Court's Order suggest some confusion.  The United States contends that the Court denied the Parties' joint motion to dismiss Peach County School District from the case because they had achieved unitary status in an Order dated January 12, 1989.  (Doc. 12 at 1).  The Peach County School District states that its "understanding" is that the Court denied the motion.  (Doc. 13 at 2).  Although the LDF Fund has not entered an appearance, it did submit a letter to the Court in which it too argued that the Court "denied a motion to dismiss that was filed by the United States and the District in 1988."  (Doc. 14 at 1).

Further, the United States, retreating from its previous acknowledgment that Peach County School District had achieved unitary status, took the position that "*the burden remains with the District to demonstrate its unitary status*, and the Byron Peach Charter School ("Charter") is obligated to demonstrate that its operation will not impede the District's desegregation efforts."  (Doc. 12 at 4-5) (emphasis added).  The emphasized language is important.  The burden of proving unitary status can be significant and the United States clearly wants that burden placed on the Peach County School District.

The Parties, particularly the United States, and the LDF Fund misread the Court's January 12, 1989 Order, a copy of which is attached.  In that Order, Judge

Owens noted that nine of the school districts, including Peach County School District, had jointly moved with the United States for the entry of a *consent* order establishing that the nine school districts had achieved unitary status. (Doc. 1-74 at 2). However, the Plaintiff-Intervenors, represented by the LDF Fund, disputed whether the school districts had achieved unitary status. (Doc. 1-74 at 2). At that point, the nine school districts joined the Plaintiff-Intervenors in asking the Court not to confirm that they had achieved unitary status but rather to dismiss the case without resolving that issue. (Doc. 1-71) (Plaintiff-Intervenors' motion for entry of agreed order of dismissal). This, Judge Owens noted, would have the effect of maintaining in place the permanent injunction mandating desegregation. (Doc. 1-74 at 2). The United States argued that this was both impractical and illegal. (Doc. 1-72) (response of the United States to Plaintiff-Intervenors' motion for entry of agreed order of dismissal). Dismissing the case without a finding of unitary status caused the United States "concern" and it doubted that the Court had the authority to dismiss the case and keep the injunction in place. (Doc. 1-74 at 2). Instead, the United States argued "the Court should proceed to determine as a predicate for dismissal whether the school districts have attained unitary status." (Doc. 1-72 at 6).

According to Judge Owens' Order, it seems that the school districts were reluctant to push the Court to determine whether they had achieved unitary status because, in the face of opposition by the Plaintiff-Intervenors, that process would be both expensive and time consuming. Nevertheless, Judge Owens noted, the issue had to be resolved "at some point" and the United States had "the right to move this court for a finding of unitary status as to each of these school systems." (Doc. 1-74 at 3). Given

that it was the United States that had commenced the litigation, Judge Owens concluded that the United States should bear the burden and expense of the inquiry to determine whether the school districts had achieved unitary status. (Docs. 1-70 at 8-9; 1-74 at 3-4). The United States expressly agreed to shoulder the burden and the cost. (Doc. 1-74 at 9-11).

The concluding paragraph of Judge Owens' Order makes clear what he expected:

> In conclusion, this court determines that plaintiff United States can make and has made a proper motion to bring before the court the issue of the unitary status of the nine defendant school districts. The facts leading to the resolution of that issue can best be ascertained through the thorough investigation and complete airing of views which are the hallmarks of the adversarial process. Thus, this court accepts the government's proposal in so far as that proposal offers to shoulder the identified costs of the defendant school districts. This court also accepts the government's offer to coordinate the investigation in the interests of efficiency and economy. In addition, the court directs the government to cooperate with and share information with plaintiff-intervenors. In the same spirit of cooperation, the court encourages plaintiff-intervenors to cooperate with both the government and the defendant school districts and to recognize, if true and when established, the unitary status of some or all of the defendant school districts. This case is about the education of children and the return to local communities of the responsibility for such education. Let that fact rather than any desire to clear cluttered files guide each of the parties in this case.

(Do. 1-74 at 6). While it is true that Judge Owens denied a motion to dismiss, the motion to dismiss that he denied was the Plaintiff-Intervenors' motion to dismiss the case and leave the permanent injunction pending. In fact, the Plaintiff-Intervenors filed a notice of appeal "from the Order entered in this cause on January 12, 1989 denying plaintiff-intervenors' Motion for Entry of Agreed Order of Dismissal." (Doc. 1-75). Far

from dismissing or denying the United States' motion for a determination that the school districts had achieved unitary status, Judge Owens expressly ordered the United States to proceed with the inquiry, at its expense.

Again, if the Peach County School District has achieved unitary status, this Court has no business getting involved in a charter school dispute. If unitary status has not been achieved, then the Court wants to move promptly to discharge its obligations pursuant to the 1974 Consent Order. It is not clear to the Court whether the United States has complied with Judge Owens' January 12, 1989 Order. Accordingly, the Court will convene a hearing on March 31, 2015 at 9:00 a.m. to hear from the United States in that regard.

**SO ORDERED**, this 13th day of March, 2015.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT